GOETZMANN et al. v. CALDWELL et al.

(Supreme Court, Equity Term, Erie County. April 3, 1915.)

1. VENDOR AND PURCHASER ☞75, 111—CONTRACTS—PERFORMANCE.
    Where a contract for the sale of land did not fix any time of performance, the law implies that it should be consummated within a reasonable time; and where the owner delayed four years in offering a marketable title, the purchaser is warranted in rescinding.
    [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 113–118, 126, 198; Dec. Dig. ☞75, 111.]

2. LANDLORD AND TENANT ☞9—PURCHASER IN POSSESSION.
    A purchaser, who goes into possession under the contract of sale, does not become a tenant, and is not liable to the vendor for the use of the land.
    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 23–29; Dec. Dig. ☞9.]

3. VENDOR AND PURCHASER ☞214—RESCISSION—RIGHTS OF VENDOR.
    Under a contract of sale, the purchaser of real property was admitted into possession. The vendor, after the expiration of four years, was unable to give a marketable title. A mortgagee of the premises, to whom the vendor assigned the contract, sought to foreclose his mortgage, and to recover from the purchaser the value of the use and occupation of the premises, which exceeded the down payment. *Held*, that as the purchaser abandoned the premises upon institution of the suit, and was not seeking to enforce specific performance, equity would follow the law, and no recovery could be had for use and occupation.
    [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 436, 442–448; Dec. Dig. ☞214.]

Action by Philip Goetzmann and another against Robert W. Caldwell and others. Foreclosure ordered.

William G. Kilhoffer, of Buffalo, for plaintiffs.
John H. Clogston, of Buffalo, for defendant Telfair.

WHEELER, J. The following facts appear in this case:
Philip Goetzmann, one of the plaintiffs, advanced from time to time various sums of money to the defendant Robert W. Caldwell. To

secure these advances, Caldwell conveyed to the plaintiff George F. Goetzmann the premises in question. Although the conveyance was absolute in form, it was in fact given and intended as nothing more than a mortgage to secure Philip Goetzmann for moneys loaned Caldwell. This action is brought to foreclose the plaintiff's lien on the premises, on the theory that the deed was in fact a mortgage.

It further appears that, after conveying the premises as stated to George F. Goetzmann, the defendant Caldwell entered into a contract with the defendant John W. Telfair, whereby Caldwell agreed to sell and convey, and the said Telfair agreed to purchase, said premises for the sum of $3,500, of which sum $300 was paid down, $1,300 was to be paid when the search and deed was delivered, and Telfair was to assume a mortgage for the balance. This agreement of sale and purchase is dated March 29, 1911. It does not in terms specify when the contract is to be carried out, or when the deed delivered; but it appears from the contract that at the date of making it the house on the premises was in process of erection by Caldwell, and by the contract Caldwell agreed to finish the work in the manner specified, and have it done by the 1st of May, 1911, when Telfair was to be given possession.

It further appears that the defendant Telfair was in fact let into possession of the premises; that it consisted of a two-family house; that he occupied one of the apartments, and leased the other to tenants. Caldwell in the meantime became financially embarrassed, mechanics' liens were filed against the property, and judgments recovered against Caldwell. Inasmuch as George Goetzmann simply held title as security for the advances made by Philip Goetzmann, and the deed to George Goetzmann was in fact a mortgage, these mechanics' liens and judgments became incumbrances upon the interest and equity of Caldwell, the real owner of the property, and a cloud on the title. It consequently followed that Caldwell was, and ever since has been, unable to make good title, so as to be able to convey the property to his vendee, Telfair. A search was furnished the vendee, and Goetzmann offered to convey; but Telfair properly refused to accept the title tendered, owing to the outstanding incumbrances. Goetzmann and Caldwell endeavored to get rid of the incumbrances, but failed, and abandoned the effort, and as a result this action to foreclose the plaintiffs' liens is brought.

At the time of the commencement of this action Telfair was still in possession of the premises, but since its commencement, and on or about December 1, 1914, vacated them. The contract of sale and purchase between Caldwell and Telfair has been assigned to the said George F. Goetzmann. Most of the facts above recited are set forth in the plaintiffs' complaint.

In the prayer for relief, the plaintiffs ask, not only that the deed to George F. Goetzmann be declared a mortgage, and the property sold to satisfy the claims of the coplaintiff, Philip Goetzmann, but also that the defendant Telfair account for the moneys received by him for rentals of the property during his occupation thereof, and for the rental value of the portion occupied by him, and that he pay the same to the plaintiffs to apply on the indebtedness owing him. In

the complaint the plaintiffs also ask that all the right and interest of the defendant Telfair in the premises be foreclosed and cut off.

[1-3] The sole question presented and litigated on this trial is the liability, if any, of the defendant Telfair for such rents, which the evidence shows exceeded the down payment of $300 made by him at the time he agreed to purchase. It is argued that in justice and equity he ought to be charged with such difference. Telfair, in his answer, admits the making of the contract, and that he went into possession, and alleges he has been ready and willing to fulfill the contract, but that no deed conveying good or sufficient title was ever offered or tendered to him. Since serving the answer, he has vacated the premises and apparently abandoned the property and contract. In view of these facts, I am unable to see how, upon any theory of the case, either in law or equity, the plaintiff can succeed in charging the defendant Telfair with the rents received, or for the use and occupation of the premises.

A serious question is presented whether a cause of action to foreclose the plaintiffs' lien can be properly joined with a cause of action to charge the defendant Telfair for rents. This misjoinder of actions is not, however, raised by answer. Brushing aside these objections to the maintenance of the two claims in the same action, we think the plaintiff cannot, nevertheless, succeed in his contention.

The plaintiffs contend that the defendant Telfair has improperly refused to carry out his contract of purchase. I can find no evidence in the case justifying any such finding of fact. It is true that Goetzmann offered to give a deed of the property to him, and Telfair refused to accept the title so made. He was entirely within his rights in that refusal. The title so made would not have been a good title. It would have been clouded by the mechanics' liens against the property and the judgments recovered against Caldwell. Telfair's refusal was a refusal to take the title tendered, and not a refusal to carry out the contract. Telfair could not be put in default on his contract by any such offer.

By judgment rendered in an action to foreclose one of the mechanics' liens, it has been held that the deed to Goetzmann was in fact a mortgage. There is no pretense that either Caldwell or Goetzmann was ever in position to or in fact tendered any deed conveying a good title. To this day they never have been able to perform the contract of sale. What next happens? Goetzmann begins this action to foreclose his lien for advances made, and in it he seeks, not to compel a specific performance of the contract of sale, but to foreclose and cut off any interest Telfair has in the premises. This, of course, he had a perfect right to do; but the commencement of such an action is in law tantamount to a notice on Goetzmann's part, as assignee of the contract of sale, that he repudiates the obligations on his part, and leaves Telfair free to treat the contract as terminated by Goetzmann. In accordance with this understanding, he doubtless vacated the premises on or about December 1st, after the commencement of this action.

Doubtless, independent of the beginning of this action to foreclose Telfair's rights in the property, he had, under the circumstances a

right to terminate and abandon the contract for nonperformance by Caldwell and his assignee, Goetzmann. The contract was made in March, 1911. It is now March, 1915. For four years no performance or proper tender of performance has been made. It is true that the contract referred to mentions no time within which the deed is to be tendered or the transaction closed. In the absence of such a stipulation or agreement as to time, we think that the law implies. that the deal was to be closed within a reasonable time from its making. We do not think it can be contended for a moment that four years was or is a reasonable time in which to perform. As a consequence, we must hold that Telfair had the perfect right to abandon the contract on his part, and refuse longer to be bound by its provisions.

Caldwell and his assignee having failed to perform, can it be-claimed that they can call on Telfair to make good their losses by way of rents collected by Telfair while in possession under the contract? If Telfair was seeking a specific performance on his part, then the rents collected by him would become items to be considered in the adjustment of the matter. But such is not the case. It was through no fault of Telfair that the situation presented was created. It is well established that a purchaser of real property, going into possession under the contract, does not thereby become the tenant of the vendor, and is under no implied agreement to pay rent for the use and occupation of the premises. Thompson v. Bower, 60 Barb. 463; Little v. Pearson, 7 Pick. 301, 19 Am. Dec. 289; Smith v. Stewart, 6 Johns. 46, 5 Am. Dec. 186; 39 Cyc. 1624, and numerous cases cited.

Plaintiffs' counsel argues that although the plaintiffs, by reason of the foregoing authorities, might not be able to recover for rent and occupation in an action at law, nevertheless, this being an action in equity, this court has power to give the relief asked. The answer is that equity follows the law, and, as stated in Magniac v. Thomson, 15 How. (U. S.) 281, 14 L. Ed. 696:

"Wherever the rights or the situation of parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation, but in all such instances the maxim 'æquitas sequitur legem' is strictly applicable."

See, also, Hedges v. Dixon County, 150 U. S. 182–192, 14 Sup. Ct. 71, 37 L. Ed. 1044.

It follows that, in so far as the complaint seeks a recovery against Telfair for rents received, the claim must be denied. In view, however, of the fact that Telfair has in fact received by way of rents more than the $300 cash payment made by him when the contract was signed, we are of the opinion that this dismissal of the demand against him should be without costs to him.

The plaintiffs' demand in other particulars is granted, and he is. entitled to the usual judgment of foreclosure and sale. So ordered..